IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ALVARO QUEZADA,

      Plaintiff,                              CV F 06 1088 OWW WMW PC

      vs.                                    ORDER DISMISSING COMPLAINT
WITH LEAVE TO
FILE AN AMENDED COMPLAINT

GEORGA GALAZA, et al.,

      Defendants.

      Plaintiff is a state prisoner proceeding pro se. Plaintiff seeks relief pursuant to 42 U.S.C. § 1983. This proceeding was referred to this court by Local Rule 72-302 pursuant to 28 U.S.C. § 636(b)(1).

      This action proceeds on the complaint. Plaintiff, an inmate in the custody of the California Department of Corrections and Rehabilitation at Kern Valley State Prison, brings this civil rights action against defendant correctional officials employed by the CDCR at Kern Valley State Prison.

      Plaintiff claims in this complaint relate to the inmate grievance process. The complaint alleges the following.

<u>September 25, 2005, Incident</u>

      On September 21, 2005, a meeting of the Inmate Affairs Committee (IAC) was held.

1

Defendants Soto and Stebbins were present. The inmate representatives addressed the issue of CDC 602 grievances "disappearing and not being processed." Soto advised the inmates that the 602s must be placed in a particular box in each housing unit. The IAC told Soto that the boxes were not activated yet. Soto said he would look into the matter. Plaintiff alleges that "Soto failed under his supervisory capacity to properly investigate and correct the issue regarding the disappearing inmate 602s." Soto also failed to report the "unconstitutional practice" to his superiors.

On September 26, 2005, Defendant John Doe Acting Associate Warden of Housing was provided the minutes of the meeting. Plaintiff alleges that he should have reviewed the minutes of the meeting before signing them. Defendant John Doe failed to conduct an investigation or issue a memorandum to his subordinates. Plaintiff concludes that this constitutes a policy. Plaintiff fails to articulate what the specific practice or policy is.[1] On September 27, 2005, the IAC drafted a memorandum to Defendant Soto regarding the meeting. Plaintiff contends that this memo placed Soto on notice of the unconstitutional conditions.

Inmate Work Crew

On October 17, 2005, Plaintiff filed an inmate grievance regarding the practice of sending level IV yard workers back to their cells during their assigned work hours. The level IV inmates were returned to their cells so that level I inmates could be on the yard. Plaintiff concedes that level IV and level I inmates can not be in the same area due to safety and security concerns. Plaintiff's grievance was returned with the indication that he could not file a grievance on behalf of another inmate. On November 1, 2005, Plaintiff res-submitted the grievance. Plaintiff did not

---

[1] An unconstitutional policy cannot be proved by proof of a single incident "unless proof of the incident includes proof that it was caused by an existing, unconstitutional policy." City of Oklahoma City v. Tuttle, 471 U.S. 808, 823-24 (1985); a single incident supplies a "policy" only when the decision-maker has "final authority" to establish the policy in question. Collins v. City of San Diego, 841 F.2d 337, 341 (9th Cir. 1988), citing Pembauer v. City of Cincinnati, 475 U.S. 469 (1986). Plaintiff alleges no such facts here.

receive a response.

On November 21, 2005, Plaintiff submitted another grievance regarding his unassignment from the work crew. The appeal was assigned Log number KVSP-B-05-00646. On January 31, 2006, Plaintiff submitted a request for interview to Defendant Gricewich, requesting the status of the inmate grievance that Plaintiff filed on November 21, 2005. On February 21, 2006, Plaintiff received a "screen out" form indicating that Plaintiff failed to file his grievance within the allotted time frame. On February 23, 2006, Plaintiff submitted a request for interview to Defendant Gricewich. Plaintiff explained that because a lockdown was in place at the time, he "never had knowledge that of this 'arbitrary' unassignment until a modified program was implemented that allowed Plaintiff to come out to yard, and at that time Plaintiff was informed by Plaintiff's former supervisor that Plaintiff had been unassigned, and no longer worked for him."

On April 5, 2006, Plaintiff received another screen out form, indicating that appeal number KVSP-B-05-00646 was assigned to another inmate grievance, and was not related to Plaintiff's complaint regarding his unassignment. The notice indicated that there was no record of the grievance related to the unassignment. Plaintiff re-submitted the grievance, backdating it to November 21, 2005. This grievance was ultimately denied as untimely.

<u>February 9, 2006, Meeting</u>

On February 9, 2006, the IAC held a meeting. Defendant Sergeant Tripp was present. The issue "regarding the Appeals Coordinator's pattern of unconstitutional practices, to delay and deny inmate 602s for frivolous reasons" was raised. Plaintiff claims that Defendant Tripp failed to report the unconstitutional conditions to his superiors.

<u>January 5, 2006, Grievance</u>

On January 5, 2006, Plaintiff filed a grievance, "in demur of having the non-affected inmates on continual lockdown, after Prison officials had finished a through search of all housing

units." Plaintiff received a screen out form on January 11, 2006, with a written comment: "Plan of Operations." Plaintiff re-submitted the grievance. To date, Plaintiff has not received a log number.

### February 1, 2006, Grievance

On February 1, 2006, Plaintiff filed a grievance, challenging the time limits set forth in the applicable regulations. On February 22, 2006, Plaintiff received a screen out form indicating that Plaintiff did not demonstrate that the issue Plaintiff was appealing adversely affected Plaintiff's welfare.

### February 23, 2006, Grievance

Plaintiff submitted a "request form" to Defendant Gricewich and John Doe MTA informing them that their conduct violated prison regulations and established law. On March 14, 2006, Plaintiff received a screen out form indicating that this grievance did not demonstrate that the issue Plaintiff was appealing adversely affected Plaintiff's welfare. Plaintiff never received a log number for this grievance. The grievance was re-submitted on March 21, 2006. To date, Plaintiff has not received a log number for this grievance.

### February 27, 2006, Letter

On February 27, 2006, Plaintiff submitted a letter to Defendant Matthew Cates, Office of the Inspector General in Sacramento. Plaintiff sought relief from Defendant Gricewich's "unconstitutional practices." Plaintiff's response, received on March 20, 2006, indicated that his appeals were properly screened out. Plaintiff claims that Defendant Cates failed to investigate the unconstitutional practices at Kern Valley State Prison. Plaintiff also sought relief from the Kern Valley State Prison Ombudsman. Plaintiff also claims that the Chief of Inmate Appeals, N. Grannis, has failed in her duties to properly instruct, train and supervise her subordinates.

### April 12, 2006, Meeting

On April 12, 2006, the IAC held another meeting. The meeting was attended by

Defendant Gricewich, Appeals Coordinator Huddleston, Lieutenant Hamlin, Sergeant Ybarra and Sergeant Marsh.  The issues raised concerned the inmate grievance process.  Specifically, the inmates raised the issue of time constraints, appeals not being responded to, the system for logging the grievances.   Though provided with minutes for this meeting, Defendant Associate Warden Dill "failed to report these unconstitutional practices to his superior to prevent future recurrences."  To this day, Plaintiff alleges, he is still not being provided log numbers for his inmate grievances.

To warrant relief under the Civil Rights Act, a plaintiff must allege and show that defendant's acts or omissions caused the deprivation of his constitutionally protected rights.  Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1993).    In order to state a claim under § 1983, a plaintiff must allege that: (1) a person was acting under color of state law at the time the complained of act was committed; and (2) that person's conduct deprived plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States.  Paratt v.Taylor, 451 U.S. 527, 535 (1981).

The statute plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See Monell v. Department of Social Services, 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).  The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which the complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Inmate Grievances

The Due Process Clause protects prisoners from being deprived of liberty without due process of law.  Wolff v. McDonnell, 418 U.S. 539, 556 (1974).   In order state a cause of action

for deprivation of due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. "States may under certain circumstances create liberty interests which are protected by the Due Process Clause." Sandin v. Conner, 515 U.S. 472, 483-84 (1995). Liberty interests created by state law are generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484.

Plaintiff's allegations concerning the appeals process and its deficiencies "[do] not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." Id. at 484-86; Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003)(no liberty interest in processing of appeals because no entitlement to a specific grievance procedure); Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001)(existence of a grievance procedure confers no liberty interest on prisoner). Because Plaintiff does not have a liberty interest at stake with respect to the inmate appeals process, Plaintiff's allegations regarding a lack of access to the prison grievance process do not give rise to a claim for relief under section 1983 for violation of the Due Process Clause.

Retaliation

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his first amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567 (9th Cir. 2005). See also Sorrano's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989)(explaining that a plaintiff must plead facts which suggest "that the protected conduct was a 'substantial' or 'motivating' factor in the defendant's decision") (citation omitted).

Here, Plaintiff fails to allege facts that state a claim for relief. The crux of Plaintiff's

complaint is that his inmate grievances are not being responded to. Plaintiff names numerous individual defendants. Plaintiff has not, however, alleged facts indicating that a named defendant engaged in specific conduct that constitutes retaliation, as that term is defined above. Generalized allegations that Plaintiff's inmate grievances are not being responded to fail to state a claim for relief. This claim must therefore be dismissed.

Because Plaintiff has failed to allege facts that state a claim for relief, the complaint must be dismissed. Plaintiff will, however, be granted leave to file an amended complaint.

If plaintiff chooses to amend the complaint, plaintiff must demonstrate how the conditions complained of have resulted in a deprivation of plaintiff's constitutional rights. See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980). Also, the complaint must allege in specific terms how each named defendant is involved. There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation. Rizzo v. Goode, 423 U.S. 362 (1976); May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

In addition, plaintiff is informed that the court cannot refer to a prior pleading in order to make plaintiff's amended complaint complete. Local Rule 15-220 requires that an amended complaint be complete in itself without reference to any prior pleading. This is because, as a general rule, an amended complaint supersedes the original complaint. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Once plaintiff files an amended complaint, the original pleading no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.

In accordance with the above, IT IS HEREBY ORDERED that:

1. Plaintiff's complaint is dismissed; and

2. Plaintiff is granted thirty days from the date of service of this order to file a

first amended complaint that complies with the requirements of the Civil Rights Act, the Federal Rules of Civil Procedure, and the Local Rules of Practice; the amended complaint must bear the docket number assigned this case and must be labeled "First Amended Complaint."  Failure to file an amended complaint in accordance with this order will result in a recommendation that this action be dismissed.

IT IS SO ORDERED.

**Dated:   March 21, 2008**                      **/s/ Oliver W. Wanger**
                                                 UNITED STATES DISTRICT JUDGE