# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALVARO QUEZADA, | CASE NO. 1:06-cv-01088-OWW-YNP PC |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING DISMISSAL OF CERTAIN CLAIMS AND DEFENDANTS |
| v. | |
| B. GRICEWICH, et al., | (Doc. 34) |
| Defendants. | OBJECTIONS DUE WITHIN 30 DAYS |

**Findings and Recommendations Following Screening of Third Amended Complaint**

Plaintiff Alvaro Quezada ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff is in the custody of the California Department of Corrections and Rehabilitation and is incarcerated at Kern Valley State Prison in Delano, California ("KVSP"). Plaintiff is suing under section 1983 for the violation of his rights under the First and Fourteenth Amendments. Plaintiff names B. Gricewich, Takahashi, N. Grannis, J. D. Soto, and 3 John Does[1] as defendants. For the reasons set forth below, the Court recommends that this action proceed on Plaintiff's Third Amended Complaint against Defendants Takahashi and John Doe #1 for retaliation and that Plaintiff's remaining claims be dismissed without leave to amend.

///

---

[1] Plaintiff identifies the John Doe defendants as "Def.1) John Doe", "Def.4) John Doe Ma(ot)", and "Def.5) John Doe Km(ot)". The Court will refer to these defendants as "John Doe #1", "John Doe Ma(ot)" and "John Doe Km(ot)", respectively within this order.

1

I.    **Screening Requirement**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

In determining whether Plaintiff's complaint fails to state a claim, the Court uses the same pleading standard used under Federal Rule of Civil Procedure 8(a). Under Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). "[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557). Further, although a court must accept as true all factual allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (quoting Twombly, 550 U.S. at 555).

II.   **Background**

   A.    **Procedural Background**

Plaintiff filed the Original Complaint in this action on August 18, 2006. (Doc. #1.) On October 16, 2006, before the Court screened Plaintiff's Original Complaint and on his own initiative, Plaintiff filed his First Amended Complaint. (Doc. #8.) On March 21, 2008, the Court screened

Plaintiff's First Amended Complaint. (Doc. #18.) The Court found that Plaintiff's First Amended Complaint failed to state any claims and gave Plaintiff leave to file a Second Amended Complaint that cured the deficiencies in his claims identified by the Court. On November 17, 2008, Plaintiff filed his Second Amended Complaint. (Doc. #26.) On May 1, 2009, the Court screened Plaintiff's Second Amended Complaint. (Doc. #30.) The Court found that Plaintiff's Second Amended Complaint failed to comply with the pleading requirements of Federal Rule of Civil Procedure 8(a), improperly joined Defendants and unrelated claims in a single action, and failed to allege a clear causal connection between each named defendant and the alleged constitutional violations. Plaintiff was also informed of the substantive deficiencies in his First, Eighth, and Fourteenth Amendment claims. Plaintiff was given leave to file a Third Amended Complaint. On July 6, 2009, Plaintiff filed his Third Amended Complaint. (Doc. #34.) This action proceeds on Plaintiff's Third Amended Complaint.

### B. Factual Background

Plaintiff claims that Defendants retaliated against him for filing administrative grievances (known as a 602 appeal/grievance), that Defendants interfered with his right of access to the courts, and that Defendants dismissed him from his work assignment without due process.

#### 1. Allegations Against Defendant John Doe #1

Plaintiff claims that John Doe #1 "vengefully had [P]laintiff illegally unassigned from his yard crew work assignment because [P]laintiff had filed a 602 grievance against KVSP officials . . . [P]laintiff was illegally removed from his paid work assignment in the attempts of deterring [P]laintiff from engaging or pursuing this appeal grievance." (Compl. 4:3-7.[2]) The grievance at issue is a 602 appeal filed on October 17, 2005, complaining about an "under ground policy" that interfered with Plaintiff's work as a "Level Four Yard Crew Worker". (Compl. 4:11-13.) Plaintiff complained that KVSP officials would send Plaintiff to his cell during work hours so they could run yard for Level One inmates that were illegally housed in a Level Four facility. (Compl. 4:13-16.)

---

[2] Citations to pages and line numbers in Plaintiff's complaint refer to the absolute page numbers within Plaintiff's complaint, rather than Plaintiff's page numbering scheme, which utilizes an unnecessarily complex combination of numbers and letters and does not take into account the first three pages of the form complaint.

1  On October 31, 2005, Plaintiff's appeal was screened out by the appeals coordinator, Defendant
2  Gricewich. (Compl. 4:17-19.)
3       Plaintiff did not participate in his yard crew work assignment between October 16, 2005 and
4  October 31, 2005 due to a prison lockdown. (Compl. 4:26-5:1.) On October 31, 2005, when
5  Plaintiff returned to his work assignment, Plaintiff was informed by his yard crew supervisor that
6  Plaintiff was no longer assigned to his "yard crew paid position". (Compl. 5:1-3.)
7       On November 21, 2005, Plaintiff filed an appeal in an attempt to discover who had
8  unassigned Plaintiff, and why he was unassigned. (Compl. 5:4-6.) After multiple appeals and
9  inquiries, Plaintiff received a response on June 14, 2006 informing him that he was unassigned from
10 his position on October 21, 2005 – four days after Plaintiff filed his 602 appeal complaining about
11 being sent to his cell during yard crew work hours. (Compl. 5:10-15.) Plaintiff complains that he
12 was not provided due process prior to being unassigned. (Compl. 5:24-25.) Plaintiff concludes that
13 John Doe #1 removed him from his work assignment in retaliation for the grievance Plaintiff filed
14 on October 17, 2005. (Compl. 5:16-19.)

### 2. Allegations Against Defendant Takahashi

16 Plaintiff claims that Takahashi retaliated against Plaintiff due to Plaintiff's active role as an
17 "inmate advisory counsel representative" for other inmates. (Compl. 7:1-4.) On February 21, 2006,
18 Takahashi threatened Plaintiff with a false rule violation report ("RVR") so that Plaintiff would be
19 removed from the Inmate Advisory Counsel ("IAC"). (Compl. 7:5-8.) Takahashi attempted to
20 blame Plaintiff for the fact that too many inmates were out of their cells and in the dayroom "since
21 [P]laintiff wanted the C/Os' to follow the rules and memos, then it was [P]laintiff's duty to insure
22 that the inmates also follow the rules." (Compl. 7:9-13.) Plaintiff complains that other inmates
23 could have misinterpreted Takahashi's statement as suggesting that Plaintiff was a "rat" reporting
24 the misconduct of fellow inmates. (Compl. 7:14-18.) Plaintiff claims that Takahashi deliberately
25 made his comment to place Plaintiff in danger of being stabbed by other inmates in order to deter
26 Plaintiff from reporting misconduct by correctional officers through the grievance process. (Compl.
27 7:19-22.)
28 ///

Takahashi then escorted Plaintiff back to his cell during "[P]laintiff's authorized IAC rep[resentative] hours" and confined Plaintiff in his cell for the rest of the day as punishment. (Compl. 7:23-25.) Takahashi taunted Plaintiff by stating, "take that to the captain" – an apparent reference to Plaintiff's propensity for reporting correctional officer misconduct to superiors. (Compl. 7:25-27.)

### 3.   Allegations Against Defendants Gricewich, Ma(ot), and Km(ot)

Plaintiff claims that appeals coordinator Gricewich refused to process or investigate Plaintiff's appeals through her "retaliatory screenouts". (Compl. 10:1-8.) Plaintiff claims that Gricewich's actions in screening out Plaintiff's administrative grievances "hindered [P]laintiff's efforts to pursue nonfrivolous legal claims" and "chilled [P]laintiff's fundamental right of access to the Courts" because "[P]laintiff was required to exhaust the established prisoner's grievance procedure before securing relief in Federal Courts." (Compl. 10:9-18.) Plaintiff alleges that Gricewich refused to process or investigate six administrative appeals from Plaintiff between October 31, 2005 through June 14, 2006. (Compl. 10:19-23.)

Similarly, Plaintiff claims that appeals coordinators John Doe Ma(ot) and John Doe Km(ot) refused to process or investigate Plaintiff's appeals through "retaliatory screenouts." (Compl. 13:1-11, 16:1-11) Plaintiff claims that John Doe Ma(ot) and John Doe Km(ot)'s actions in screening out Plaintiff's appeals "chilled [P]laintiff's fundamental right of access to the Courts" because "[P]laintiff was required to exhaust the established prisoner's grievance procedure before securing relief in the Federal Courts." (Compl. 13:12-16, 16:12-16.)

### 4.   Allegations Against Defendants Grannis, Soto, and Dill

Plaintiff claims that Grannis is the "Chief Inmate Appeals Coordinator". (Compl. 19:1-5.) Plaintiff appealed the decisions from Defendants Gricewich, John Doe Ma(ot) and John Doe Km(ot) to deny or screen out Plaintiff's grievances. (Compl. 19:12-18.) On May 19, 2006, Grannis responded to Plaintiff's appeals and refused to redress the "retaliatory screenouts". (Compl. 20:1-4.) Plaintiff complains that "Grannis had an obligatory duty to act and failed to act, thus her inactions furthered the concerted conspiracy to retaliate against plaintiff." (Compl. 20:11-14.) Plaintiff further

///

claims that Grannis consciously permitted her subordinates to violate Plaintiff's constitutional rights. (Compl. 21:11-16.)

Similarly, Plaintiff alleges that Defendants Soto and Dill failed to prevent the constitutional violations of their subordinates. Plaintiff alleges that Soto was an "acting captain" present during an IAC meeting held on September 21, 2005. (Compl. 22:1-4.) Plaintiff alleges that Dill was the associate warden of "Complex One". (Compl. 24:1-6.) Plaintiff alleges that Soto and Dill were directly notified on multiple occasions about the unconstitutional practice of refusing to process inmate grievances. (Compl. 22:5-24, 24:1-6.) Plaintiff claims that Soto and Dill failed to act to prevent or redress the practice of ignoring inmate grievances. (Compl. 23:4-6, 25:12-14.)

### III. Discussion

#### A. Retaliation Claims

Plaintiff claims that Defendants retaliated against him because he filed inmate grievances. In the prison context, allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim. Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). "[A] viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005). An allegation of retaliation against a prisoner's First Amendment right to file a prison grievance is sufficient to support a claim under section 1983. Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003).

Plaintiff claims that Takahashi harassed Plaintiff in retaliation for Plaintiff's activities as IAC representative. Plaintiff alleges that Takahashi endangered Plaintiff's safety by suggesting to other inmates that Plaintiff was a rat. Takahashi also confined Plaintiff to his cell for a day when Plaintiff should have been participating in an IAC meeting. Takahashi's retaliatory intent is demonstrated by Plaintiff's allegation that Takahashi told Plaintiff to "take that to the captain," a reference to Plaintiff's history of filing complaints. Takahashi's retaliatory intent is also demonstrated by the fact

6

1  that he confined Plaintiff to his cell during IAC meeting hours – the meetings when Plaintiff engaged
2  in his activities as a prison advocate.  Plaintiff states a cognizable claim for retaliation against
3  Defendant Takahashi.

4        Plaintiff claims that John Doe #1 removed Plaintiff from his work assignment in retaliation
5  for filing an inmate grievance.  Plaintiff claims that he filed a grievance on October 17, 2005
6  complaining about losing work hours because he was sent to his cell from his during work
7  assignment hours while the prison ran yard for Level One inmates.  Four days later, Plaintiff was
8  released from his work assignment.  Plaintiff is unable to identify the prison official who caused him
9  to be terminated from his work assignment, but claims that whoever did release him did so out of
10 retaliation for the grievance he filed four days earlier complaining about certain aspects about the
11 work assignment.  Thus, Plaintiff was terminated from his work assignment because he engaged in
12 his constitutionally protected right to file grievances to prison officials.  Plaintiff states a cognizable
13 claim against Defendant John Doe #1 for retaliation.

14       Plaintiff characterizes Gricewitch, John Doe Ma(ot), and John Doe Km(ot)'s screenouts of
15 Plaintiff's inmate grievances as retaliatory.  The Court need not accept Plaintiff's bare allegation that
16 the screenouts were retaliatory as true, and analyzes Plaintiff's factual allegations to determine
17 whether Gricewitch, John Doe Ma(ot), and John Doe Km(ot)'s actions constituted retaliation as a
18 matter of law.  In his complaint, Plaintiff does not specifically allege that his grievances were ignored
19 <u>because</u> he exercised his constitutional right to file grievances against the government, nor do
20 Plaintiff's allegations suggest any retaliatory motive.  Plaintiff does not provide any allegations about
21 Gricewitch, John Doe Ma(ot), or John Doe Km(ot)'s intent, such as whether their intent was
22 retaliatory, or mere negligence or laziness.  Thus Plaintiff's complaint fails to establish the critical
23 element of a retaliation claim: that Defendants screened out Plaintiff's grievances <u>because</u> he
24 exercised his constitutional right to file grievances.  Plaintiff fails to state a cognizable claim for
25 retaliation against Defendants Gricewitch, John Doe Ma(ot), or John Doe Km(ot).

26       The Court has twice previously informed Plaintiff of the legal standards for stating a
27 retaliation claim and dismissed Plaintiff's retaliation claims with leave to amend.  (Order Dismissing
28 Second Amended Complaint With Leave To Amend 6:12-7:1, May 1, 2009; Order Dismissing

Complaint With Leave To File An Amended Complaint 6:16-7:5, March 21, 2008.) The Court finds that Plaintiff's retaliation claims against Defendants Gricewitch, John Doe Ma(ot), and John Doe Km(ot) are not capable of being cured by further amendment and recommends that they be dismissed without leave to amend.

### B. Access to Courts Claims

Plaintiff claims that Defendants Gricewitch, John Doe Ma(ot), and John Doe Km(ot) violated his constitutional rights because their refusal to process Plaintiff's inmate grievances interfered with Plaintiff's right of access to the Courts. Prisoners have a constitutional right of access to the courts. See Lewis v. Casey, 518 U.S. 343, 346 (1996); Bounds v. Smith, 430 U.S. 817, 821 (1977); Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995) (discussing the right in the context of prison grievance procedures); Vandelft v. Moses, 31 F.3d 794, 796 (9th Cir. 1994); Ching v. Lewis, 895 F.2d 608, 609 (9th Cir. 1989) (per curiam). To establish a violation of the right of access to the courts, a prisoner must establish that he or she has suffered an actual injury, a jurisdictional requirement that flows from the standing doctrine and may not be waived. See Lewis, 518 U.S. at 349. An "actual injury" is "'actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim.'" Id. at 348.

Plaintiff claims that he suffered actual injury because Gricewitch, John Doe Ma(ot), and John Doe Km(ot) hindered Plaintiff's efforts in pursuing a legal claim. However, Plaintiff has not alleged that he was unable to file a complaint, unable to meet a filing deadline, or otherwise suffered actual prejudice in any lawsuit before any court. Plaintiff only alleges that he is required to exhaust his remedies through the inmate grievance system before securing relief in federal court. However, Plaintiff's claims have not yet been dismissed for failure to exhaust. Further, it is not clear that Plaintiff's claims would be dismissed for failure to exhaust if Defendants obstructed his attempts to exhaust. Regardless, Plaintiff has not yet been prevented from securing relief in federal court on any of his claims and Plaintiff's claims are premature because he has not yet suffered any actual injury. Plaintiff fails to state a claim against Defendants Gricewitch, John Doe Ma(ot), or John Doe Km(ot) for interfering with Plaintiff's access to the courts.

///

1  The Court has previously informed Plaintiff of the legal standards for stating an access to courts claim and dismissed Plaintiff's access to courts claims with leave to amend due to Plaintiff's failure to allege that he suffered an actual injury. (Order Dismissing Second Am. Compl. 7:2-22, May 1, 2009.) The Court finds that Plaintiff's access to courts claims against Defendants Gricewitch, John Doe Ma(ot), and John Doe Km(ot) are not capable of being cured by further amendment and recommends that they be dismissed without leave to amend.

### C. Fourteenth Amendment Due Process Claims

Plaintiff claims that Defendant John Doe #1 violated Plaintiff's due process rights when John Doe #1 removed Plaintiff from his yard crew work assignment. The Due Process Clause protects prisoners from being deprived of liberty without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. Liberty interests may arise from the Due Process Clause itself or from state law. Hewitt v. Helms, 459 U.S. 460, 466-68 (1983). Liberty interests created by state law are generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995).

Plaintiff claims that he has a protected liberty interest in his work assignment. Plaintiff alleges that being unassigned from his yard crew work assignment imposed an atypical and significant hardship. Plaintiff thus claims that his due process rights were violated because he was deprived of his alleged liberty interest in his work assignment without the minimal procedural protections set forth in Wolff. Plaintiff's claim that he has a liberty interest in his work assignment is not supported by law. "[T]he Due Process Clause of the Fourteenth Amendment 'does not create a property or liberty interest in prison employment.'" Walker v. Gomez, 370 F.3d 969, 973 (9th Cir. 2004) (citing Ingram v. Papalia, 804 F.2d 595, 596 (10th Cir. 1986)). While Plaintiff's interest in his work assignment is not sufficient to rise to the level of aa liberty interest protected by the Due Process Clause, the Court notes that Plaintiff is protected from retaliatory or discriminatory termination from his work assignment elsewhere in the Constitution. See discussion supra Part III.A (finding that Plaintiff's allegations are sufficient to support a retaliation claim under the First

Amendment).  Plaintiff fails to state a cognizable claim against Defendant John Doe #1 for the violation of his rights under the Due Process Clause.

The Court has twice previously informed Plaintiff of the legal standards for stating a due process claim and dismissed Plaintiff's due process claims with leave to amend. (Order Dismissing Second Am. Compl. 7:23-10:19, May 1, 2009; Order Dismissing Compl. 5:15-22, March 21, 2008.) The Court finds that Plaintiff's due process claim against Defendant John Doe #1 is incapable of being cured by further amendment and recommends it be dismissed without leave to amend.

### D.    Claims Against Supervisory Personnel (Grannis, Soto, and Dill)

Plaintiff claims that Defendants Grannis, Soto, and Dill are liable for failing to prevent the constitutional violations of their subordinates.  Plaintiff alleges that Grannis, Soto, and Dill were notified that Defendant appeals coordinators (Gricewich, John Doe Ma(ot), and John Doe Km(ot)) were failing to process or investigate Plaintiff's appeals and that Grannis, Soto, and Dill failed to remedy the situation.  Supervisory personnel are generally not liable under section 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979).  To state a claim for relief under section 1983 based on a theory of supervisory liability, plaintiff must allege some facts that would support a claim that supervisory defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'"  Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

Plaintiff attempts to hold Grannis, Soto, and Dill liable under the theory that they had knowledge of ongoing constitutional violations and failed to act to prevent them.  However, the underlying conduct that Plaintiff complains of – the refusal to process inmate grievances – is not a constitutional violation.  See discussion supra Parts III.A, B.  Thus, the failure to prevent the refusal

to process inmate grievance by Grannis, Soto, and Dill is not a constitutional violation. Plaintiff fails to state any cognizable claims against Defendants Grannis, Soto, or Dill.

The Court finds that the underlying constitutional claims that Grannis, Soto, and Dill allegedly failed to prevent are incapable of being cured by further amendment and recommends that they be dismissed without leave to amend, see discussion supra Parts III.A, B.  Thus, the Court finds that Plaintiff's claims against Defendants Grannis, Soto, and Dill are also incapable of being cured by further amendment and recommends that they be dismissed without leave to amend.

## IV. Conclusion and Recommendation

The Court finds that Plaintiff's Third Amended Complaint states a cognizable claims under section 1983 against Defendant Takahashi for retaliation by harassing Plaintiff and confining him in his cell for a day because of Plaintiff's exercise of his constitutional right to file inmate grievances.  As for Plaintiff's remaining claims, Plaintiff has amended his complaint three times, twice pursuant to orders of this Court, and has failed to cure the deficiencies in his claims that were identified by the Court.  Accordingly, the Court finds that Plaintiff's claims are not curable by further amendment and recommends that further leave to amend not be granted, and this action be ordered to proceed only on those claims identified herein as cognizable.  Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).

For the reasons set forth herein, the Court HEREBY RECOMMENDS that:

1. This action proceed on Plaintiff's Third Amended Complaint, filed July 6, 2009, against Defendants Takahashi and John Doe #1 for retaliation;
2. Plaintiff's retaliation claims against Defendants Gricewitch, John Doe Ma(ot), and John Doe Km(ot) be dismissed without leave to amend, for failure to state a claim upon which relief may be granted under section 1983;
3. Plaintiff's access to the courts claims against Defendants Gricewitch, John Doe Ma(ot), and John Doe Km(ot) be dismissed without leave to amend, for failure to state a claim upon which relief may be granted under section 1983;

///

///

4.  Plaintiff's due process claim against John Doe #1 be dismissed without leave to amend, for failure to state a claim upon which relief may be granted under section 1983; and

5.  Plaintiff's claims against supervisory Defendants Grannis, Soto, and Dill be dismissed without leave to amend, for failure to state a claim upon which relief may be granted under section 1983.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these Findings and Recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   September 21, 2009**              /s/ Sandra M. Snyder
                                            UNITED STATES MAGISTRATE JUDGE